Hadley, J.
The plaintiff, E & G Food Corp., is in the business of cashing checks for its customers for a fee. In February, 2009, the plaintiff was presented with four payroll checks totaling $2,809.70 that were allegedly issued by the defendant, Cumberland Farms, Inc. The plaintiff cashed the checks, but when the plaintiff presented the checks to Bank of America for deposit, the bank refused to honor them because they were counterfeits. The plaintiff commenced this action against the defendant, asserting that the defendant acted negligently in allowing its payroll checks to be preprinted with signatures on them and in allowing unauthorized personnel to use its rubber signature stamp. In addition, the plaintiff alleged that it is a holder in due course and is protected pursuant to G.L.c. 106, §§3-302 and 3-406. Following a jury-waived trial, the trial judge determined that the defendant was not negligent, but that the plaintiff was a holder in due course. He found in favor of the plaintiff, awarded the plaintiff damages, and the defendant appealed. After reviewing the pleadings and the evidence, we find that G.L.c. 106, §3-305 applies to the circumstances presented in this action, and that the defendant is not legally responsible for the plaintiff’s loss.
Based on the trial judge’s detailed findings, the pertinent facts in this case are as follows. In December, 2008, the defendant issued four payroll checks to four of its employees. Each check was drawn on the defendant’s account at Bank of America. Each bore the defendant's name as well as an eight-digit check number, the employee’s name, and an authorized stamp of the signature of the company’s CEO. The checks were all subsequently negotiated by the named employees.
In February, 2009, unidentified individuals presented four checks to the plaintiff. The checks were very similar to the four payroll checks issued by the defendant in December. They bore the same check numbers. But the names of the payees on the checks were different, and the named payees were not employed by the defendant. The defendant had given Bank of America a list of its employees so that the bank could verify that every employee payroll check presented for payment listed the proper employee. The plaintiff, however, did not contact Bank of America to verify the authenticity of the checks.
Each payroll check issued by the defendant in December and each of the checks presented to the plaintiff in February also bore a notation stating that the check “contains ultraviolet fibers, chemical reactive paper, void pantograph, microprint signature line, and an artificial watermark on the back.” Prior to cashing the checks, the plaintiff’s employees examined them and scanned each check under a machine *205 to detect alterations, but found nothing improper. At the same time, the plaintiffs employees were unfamiliar with some of the enumerated security features of the defendants actual payroll checks. Moreover, they did not have the equipment needed to verify that the checks that were presented had all of the listed security features. In addition, each of the defendants actual payroll checks bore a three-digit number on the payee line. This number reflected the last three digits of the check number printed in the upper right corner of the check. The three-digit numbers on the four checks the plaintiff received in February, 2009, however, did not match the last three digits of the respective check numbers on the actual payroll checks. Despite these questionable circumstances, the plaintiff cashed all four checks, only to be notified later by Bank of America that the checks would not be honored. The defendant refused the plaintiff’s subsequent demand that it make payment on the checks.
At trial, the defendant established that it had taken many precautions to account for all of its payroll checks and to ensure that its checks were not misappropriated. The trial judge found that the checks that were presented to the plaintiff in February, 2009 were counterfeits, that is, forged images of the true payroll checks previously issued to the defendant’s employees. The checks were not signed by any authorized representative or employee of the defendant, and they were not produced from any misappropriated blank checks previously in the defendant’s possession. Based on these facts, the trial judge determined that the defendant was not negligent in any way. Nonetheless, he found the defendant legally responsible for the plaintiff’s loss based on the plaintiff’s status as a holder in due course.
Massachusetts law, however, provides that the right to enforce the obligation of a party to pay an instrument is subject to a defense based on “illegality of the transaction which, under other law, nullifies the obligation of the obligor.” G.L.c. 106, §3-305 (a) (1) (ii). Even the right of a holder in due course to enforce an obligation is subject to this defense. G.L.c. 106, §3-305(b).
In New Bedford Inst. for Sav. v. Gildroy, 36 Mass. App. Ct. 647 (1994), the Appeals Court noted that “fraud in the factum,” or fraud in the inception, is one of the defenses that can be interposed against “even the most purehearted and scrupulously attentive holder in due course.” Id. at 657. As noted in Frishman v. Maginn, 75 Mass. App. Ct. 103 (2009), “it is well established that a contract violating public policy will not be enforced.” Id. at 116. See also Federico v. Brockton Credit Union, 39 Mass. App. Ct. 57, 63 (1995); LEMMELMAN, MANUAL ON UNIFORM COMMERCIAL CODE §§3:142-3:147, at 423-426 (3d ed. 2002).
Similarly, in Ingersoll-Rand Financial Corp. v. Anderson, 921 F.2d 497 (3d Cir. 1990), the Court (applying New Jersey law), recognized that when a negotiable instrument is claimed to be a forgery, until such time as its status as a genuine instrument is established, even a holder in due course takes subject to a forgery defense under §3-305 of the Uniform Commercial Code. Id. at 503. In David v. First Natl Bank of Commerce, 650 So. 2d 1227 (La. App. 1995), the Louisiana Court of Appeal, applying the same section of the Uniform Commercial Code, also noted,' under similar circumstances involving a forged check, that by enforcing the obligation, the court, in effect, would be perpetuating a crime. Id. at 1230-1231.
In the instant case, the trial judge clearly found that the counterfeit checks in question were created by unknown third-party actors, who were not in any way related to the defendant. The judge concluded that the defendant had no knowledge of *206 the creation of the counterfeit checks. The creation of the checks and their presentment by the third-party actors constituted, therefore, criminal acts. In light of these facts, despite the trial judge’s conclusion that the plaintiff was a holder in due course, its right to enforce the obligation to pay on the four checks was subject to the defense of illegality set out in G.L.c. 106, §3-305 (a) (1) (ii). As the illegality of the transaction was established at trial, judgment should have been entered for the defendant.
Accordingly, the judgment in favor of the plaintiff, E & G Food Corp., is reversed and vacated, and judgment in favor of the defendant, Cumberland Farms, Inc., is to be entered.
So ordered.